498 So.2d 882 (1986)
John E. FISHER, et al., Petitioners,
v.
SHENANDOAH GENERAL CONSTRUCTION CO., et al., Respondents.
No. 67451.
Supreme Court of Florida.
November 26, 1986.
Rehearing Denied January 5, 1987.
Tyrie A. Boyer of Boyer, Tanzler & Boyer, Jacksonville, Richard A. Barnett of Richard A. Barnett, P.A., Hollywood, and Debra Levy Neimark of Neimark & Neimark, Coral Springs, for petitioners.
Jonathan L. Gaines and E. Bruce Johnson of Fleming, O'Bryan & Fleming, Ft. Lauderdale, for respondents.
Robert B. Miller of Friedman & Miller, North Miami Beach, for amicus curiae, The Academy of Florida Trial Lawyers.
Arthur J. England, Jr. and Charles M. Auslander of Fine, Jacobson, Schwartz, Nash, Block & England, P.A., Miami, for amicus curiae, Florida Power & Light Co.
McDONALD, Chief Justice.
The Fourth District Court of Appeal has certified the following question as being of great public importance:
DOES THE FLORIDA WORKERS' COMPENSATION LAW PRECLUDE ACTIONS BY EMPLOYEES AGAINST THEIR CORPORATE EMPLOYERS FOR INTENTIONAL TORTS EVEN THOUGH THE INJURIES WERE INCURRED *883 WITHIN THE SCOPE OF THEIR EMPLOYMENT.
Fisher v. Shenandoah General Construction Co., 472 So.2d 871, 873 (Fla. 4th DCA 1985) (footnote omitted). We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. Although the certified question confers jurisdiction upon this Court, we refrain from answering it because we do not view the question as germane to the facts alleged in the pleadings. See Cleveland v. City of Miami, 263 So.2d 573 (Fla. 1972). Rather, we restate the certified question as follows:
WHETHER AN EMPLOYER COMMITS AN INTENTIONAL TORT WHEN HE ORDERS HIS EMPLOYEE TO WORK INSIDE A PIPE WHICH THE EMPLOYER KNOWS TO BE FILLED WITH DANGEROUS GAS THAT WILL IN ALL PROBABILITY RESULT IN INJURY TO THE EMPLOYEE.
We answer in the negative and approve the opinion of the district court in result only.
This case involves a suit against Shenandoah General Construction Company for the wrongful death of one of its employees, Shaun E. Fisher. Fisher, acting on his employer's orders, was cleaning the inside of an underground pipe with a high pressure hose when he succumbed to noxious methane gas fumes. His exposure to this gas ultimately led to his death and the personal representatives of his estate brought suit against Shenandoah.
The Florida Workers' Compensation Act provides for the payment of compensation benefits whenever disability or death results from an injury arising out of and in the course of employment. § 440.09(1), Fla. Stat. (1979). Section 440.11(1), Florida Statutes (1979), provides that compensation under the act is the exclusive remedy available to such an employee. Although Fisher's representatives readily admit that the deceased encountered the methane gas while in the course and scope of his employment, they argue that Shenandoah's conduct constituted an intentional tort and therefore does not fall within the scope of the act.
The trial court, apparently unpersuaded by this argument, dismissed the complaint due to the exclusivity provision of the act. On appeal, the fourth district affirmed that dismissal, ruling that intentional torts fall within the purview of the act and that, because the legislature has not specifically authorized common law actions for intentional torts against employers, the act prohibits this claim. The district court, however, expressly refrained from determining whether the complaint actually did state a cause of action sounding in intentional tort.
In our view the district court should not have addressed the relationship between intentional torts and the Workers' Compensation Act without first answering the threshold question of whether the second amended complaint stated a cause of action for intentional tort. Indeed, had the district court confronted this question directly, we believe the court would not have reached the broader issue of whether intentional torts fall within the purview of the act. The complaint alleges, inter alia, that Shenandoah required the deceased to enter pipes which it knew contained noxious fumes and which would "in all probability" cause injury or death. The complaint further alleges that Shenandoah failed to provide its workers with oxygen masks, gas detection equipment, rescue equipment, and other safety equipment, and otherwise failed to comply with OSHA regulations. Indeed, the complaint alleges that Shenandoah wilfully and wantonly required its employees to deliberately evade OSHA safety inspections so as to prevent the company from being cited for safety violations. Yet even assuming that these allegations are true, Shenandoah's failure to provide a safe workplace or to follow OSHA guidelines does not constitute an intentional tort.
In order for an employer's actions to amount to an intentional tort, the employer must either exhibit a deliberate intent to injure or engage in conduct which is substantially certain to result in injury or death. Spivey v. Battaglia, 258 So.2d 815 (Fla. 1972); Reed Tool Co. v. Copelin, 689 S.W.2d 404 (Tex. 1985). A strong probability *884 is different from substantial certainty and cannot constitute intentional wrongdoing. Restatement (Second) of Torts § 500 comment f (1965). The complaint involved here does not allege such virtual certainty on the part of Shenandoah; rather, it speaks only in terms of probable injury. Such an allegation is insufficient in light of the strict interpretation that must be given to the definition of intentional tort. Such a strict reading is necessary because nearly every accident, injury, and sickness occurring at the workplace results from someone intentionally engaging in some triggering action. Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 501 A.2d 505 (1985). In the words of Prosser,
[T]he mere knowledge and appreciation of a risk  something short of substantial certainty  is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but is not an intentional wrong.
Prosser & Keeton on Torts 36 (W. Keeton 5th ed. 1984) (footnote omitted). Because Shenandoah's conduct does not rise to the level of intentional wrongdoing, we do not reach the question of whether such an intentional tort would fall outside the scope of the act.
Although we can foresee instances where an intentional tort might occur within the scope of employment, the present case does not present such a situation. Therefore, we need not answer the question framed by the district court and, instead, we answer the restated question in the negative. We approve the result but quash the opinion of the district court.
It is so ordered.
BOYD, OVERTON and EHRLICH, JJ., concur.
ADKINS, J., dissents with an opinion, in which SHAW and BARKETT, JJ., concur.
ADKINS, Justice, dissenting.
I dissent. The second amended complaint filed by John E. and Lily May Fisher clearly states a cause of action sounding in intentional tort. Further, Workers' Compensation is not the exclusive remedy of an employee against an employer who commits an intentional tort within the scope of employment.
The majority acknowledges that Shaun E. Fisher was killed when his employer ordered him to clean, with a high-powered hose, the inside of an underground pipe containing deadly gases. The majority also concedes that the complaint alleged that Shenandoah failed to provide safety equipment or comply with safety regulations. However, the majority refused to acknowledge that the complaint stated a cause of action sounding in intentional tort because the complaint only alleged that Shenandoah knew "in all probability" that an injury would occur and failed to assert that Shenandoah exhibited a deliberate intent to injure or engage in conduct which was substantially certain to result in injury or death. The majority is wrong in two respects. First, and most unfortunately, the court finds that the precise wording in the complaint is determinative in deciding whether the plaintiffs alleged a prima facie case for intentional tort. The fact that the complaint, in one instance, used the term "in all probability" should not be determinative. Rather, the court should examine the complaint in its entirety before determining whether a prima facie case sounding in intentional tort has been alleged. Jones v. VIP Development Co., 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984). Second, the majority overlooks allegations in the complaint that, even under the egregious standards set forth by the majority, clearly state a cause of action for intentional tort.
Count I of the original complaint alleges that the death was due to Shenandoah's failure to provide oxygen masks, gas detection equipment, and proper rescue equipment for employees whom Shenandoah knew would be exposed to deadly gases in the underground pipe. The complaint further *885 alleged that Shenandoah failed to properly warn employees of the deadly underground gases and instruct in the proper means of avoiding serious injury or death. Fisher also alleged that Shenandoah deliberately and intentionally refused to comply with Occupational Safety Health Administration safety regulations despite prior citations. Finally, Fisher charged that Shenandoah required its employees to actively avoid safety inspections including requiring workers to perform certain jobs at night to avoid safety inspectors. Fisher's second amended complaint alleged that Shenandoah intentionally caused the decedent's death by requiring him to go into pipes which they knew contained noxious fumes. The complaint further alleged that Shenandoah knew that Shaun Fisher would be facing serious injury or death if he were to go into the pipe unprotected. Clearly, the second amended complaint states a cause of action sounding in intentional tort.
The majority is correct in holding that an employer's actions do not constitute an intentional tort unless the employer exhibits a deliberate intent to engage in conduct which is substantially certain to result in injury or death. The Court errs, however, in alluding to the fact that the complaint in this instance does not allege that the employer engaged in conduct that was virtually certain to result in injury or death. No court in this nation, to my knowledge, has required an employee to allege that the employers engage in conduct that is virtually certain to result in injury or death before a cause of action for intentional tort is recognized. For differing standards applied by various courts, scholars and treatises see Prosser and Keeton on Torts 33-37 (W. Keeton 5th ed. 1984). Although the Court has not explicitly closed the courthouse door to employees who are intentionally maimed or killed by their employers, the failure of this Court to recognize an intentional tort when one is presented has the same effect.
The district court of appeal erred in holding that the Workers' Compensation Law precludes actions against employers for intentional torts. The district court reasoned that the Workers' Compensation Statute, section 440.11(1), Florida Statutes (1983), provides that Workers' Compensation is exclusive and in place of all other liability, and that the same provision allows an employee to maintain a common law cause of action for intentional tort against a fellow employee but is silent in regard to employers. Hence, the court held, Workers' Compensation provides the exclusive remedy for an employee who is intentionally maimed or killed by an employer.
Where the Workers' Compensation Act is susceptible of disparate interpretations, the court must adopt the construction most favorable to the employee. Kerce v. Coca-Cola Company Foods Division, 389 So.2d 1177 (Fla. 1980); Farrens Tree Surgeons v. Winkles, 334 So.2d 569 (Fla. 1976); Henderson v. Sol Walker & Co., 138 So.2d 323 (Fla. 1962). The construction that I place on the Workers' Compensation Act, that it does not cover intentional tort actions, is not only more favorable to the employee, but is mandated by the express terms of the act itself. This presents a stark contrast to the district court's decision which merely presumes that the legislature considered intentional torts under the ambit of the Workers' Compensation Act because of an alleged omission in the statute.
Section 440.09(1), Florida Statutes (1983) provides in pertinent part:
Compensation shall be payable under this chapter in respect of disability or death of an employee if the disability or death results from an injury arising out of and in the course of employment.
(Emphasis supplied). Injury is defined in section 440.02(14) as follows:
[P]ersonal injury or death by accident arising out of and in the course of employment.
(Emphasis supplied). By limiting the definition of injury to accident, the statute, by necessary implication, excludes intentional torts of the employer from its coverage. Obviously, an intentional tort is never accidental. Clearly, the Workers' Compensation *886 Act does not affect rights which are not within the purview of the act or excluded from the act by necessary implication. American Freight System, Inc. v. Florida Farm Bureau Casualty Insurance Co., 453 So.2d 468 (Fla. 2d DCA 1984). Thus, an employee may bring a common law action for intentional tort against his employer despite the exclusive remedy provision in the Workers' Compensation Act. Other courts, both within Florida and throughout the nation, have reached the same conclusion.
The First District Court of Appeal has, on two occasions, addressed the question of whether Workers' Compensation provides the exclusive remedy for an intentional committed by an employer within the scope of employment. In Schwartz v. Zippy Mart, Inc., 470 So.2d 720 (Fla. 1st DCA 1985), two employees filed suit against their employer, Zippy Mart, and against their supervisor, Bobby Adams, for various sexual assaults and batteries which had been committed by Adams. The claims against Adams were not at issue. The employees alleged that Zippy Mart was liable for the assaults and batteries committed by the supervisor under the doctrine of respondeat superior. The employees also alleged that Zippy Mart was negligent in its hiring, supervision and retention of Adams. The court affirmed a summary judgment entered in favor of Zippy Mart on the grounds that Workers' Compensation provided the exclusive remedy. The court acknowledged, however, that "an employer ... cannot intentionally injure an employee and enjoy immunity from suit." Id. at 724. The affirmance of the summary judgment in favor of Zippy Mart was premised upon the finding that the doctrine of respondeat superior was inapplicable and the remaining allegations regarding Zippy Mart were based upon simple negligence as opposed to intentional tort. A specially concurring opinion explained, "I perceive no legislative intent to shield employers, individual or corporate, from direct civil liability for intentional torts or actions based on employer conduct which might inferentially support a finding of willful intent." Id. at 725.
In Brown v. Winn-Dixie Montgomery, Inc., 469 So.2d 155 (Fla. 1st DCA 1985), an employee of Winn-Dixie grocery store alleged that her supervisor "reached over and grabbed her breast" during working hours. The claims against the supervisor were not at issue. The trial court entered an order of summary judgment in favor of Winn-Dixie, finding that the claim was barred by the exclusivity provision of the Workers' Compensation Act. The district court of appeal affirmed, holding that an employee may not sue an employer for intentional torts committed by a supervisor, and the cause of action against Winn-Dixie, the negligent retention of an employee, sounded in negligence and not intentional tort. Once again, however, the First District Court of Appeal acknowledged that an exception to the exclusivity requirement of the Workers' Compensation Act exists for intentional torts committed by an employer. Id. at 157.
No state in the nation, with the exception of Delaware, Kofron v. Amoco Chemicals Corp., 441 A.2d 226 (Del. 1982), prohibits an employee from bringing a common law cause of action against an employer sounding in intentional tort, due to an exclusivity provision in a Workers' Compensation Act. A well-respected treatise concludes:
Intentional injury inflicted by the employer in person on his employee may be made the subject of a common-law action for damages on the theory that, in such an action, the employer will not be heard to say that his intentional act was an "accidental" injury and so under the exclusive provisions of the compensation act.
2A Larson's Workmen's Compensation Law, § 68.00, 13-1 (1982). Many state statutes expressly provide that an intentional tort committed by an employer falls outside the scope of their exclusivity provisions. See, e.g., Ariz. Rev. Stat. Ann. § 23-1022; La. Rev. Stat. Ann. § 23:1032; Wash. Rev. Code Ann. § 51.24.020. In other states, courts have interpreted statutes similar to our own, and determined that the exclusivity provisions of the applicable *887 Workers' Compensation Acts do not bar an employee from suing an employer for monetary damages resulting from an intentional tort. A few of these cases warrant discussion because they not only rebut the district courts finding that the exclusivity provision in the Workers' Compensation Act precludes a common law action in intentional tort, but the facts involved make a mockery of this Court's finding that the plaintiff failed to allege a prima facie case of intentional tort.
In Wade v. Johnson Controls, Inc., 693 F.2d 19 (2d Cir.1982), the court recognized that the Vermont Supreme Court, in Kittell v. Vermont Weatherboard, Inc., 138 Vt. 439, 417 A.2d 926 (1980), held that an employer's specific intent to injure falls outside of the exclusivity provisions of the Workers' Compensation Act. As a result the federal court held that a complaint alleging that the plaintiffs suffered permanent neurological injury as a result of exposure to airborne lead particulate while working at a battery plant stated a cause of action in intentional tort. The complaint alleged, inter alia, that the employer knowingly caused its air purification system to cease operation, intentionally subjected employees to levels of lead particulate which were known to be hazardous to health, and knowingly failed to warn its employees of the altered levels of lead particulate in the air and the risks thereby created. 693 F.2d at 21. If the complaint in Wade alleged the required specific intent to injure, then the complaint in the instant case certainly alleged that the employer exhibited a deliberate intent to engage in conduct which is substantially certain to result in injury or death.
In Jones v. VIP Development Co., 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984), the court cited its prior decision of Blankenship v. Cincinnati Milacron Chemicals, 69 Ohio St.2d 608, 433 N.E.2d 572, cert. denied, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982), for the proposition that the existence of Workers' Compensation does not preclude an employee from suing an employer for an intentional tort. The court also explained, as the majority of this Court holds, that the element of substantial certainty of injury distinguishes an intentional from a negligent act and a specific intent to injure is not an essential element of intentional tort. 15 Ohio St.3d at 95, 472 N.E.2d at 1051. The court then proceeded to address the issue of whether the complaints in the three consolidated cases stated a cause of action sounding in intentional tort. Two of the three consolidated cases are analogous to the case at bar and therefore warrant a factual rendition.
Willie Gains worked for the City of Plainsville as a coalman-ashman at its municipal light plant. Part of his job was to keep coal chutes free from accumulation. The employer cut the safety cover off of the chutes. Subsequently, Gaines placed his hand in the chute to loosen accumulated coal dust and was caught by a pulley and killed. The estate presented evidence that the employer knew that the safety cover was intended to protect employees from the kind of injury he suffered and that the risk posed to employees by the removal of the cover was extremely high. In holding that the conduct of the employer may be characterized as an intentional tort the court noted that "[a] defendant who fails to warn of a known defect or hazard which poses a grave threat of injury may reasonably be considered to have acted despite a belief that harm is substantially certain to occur." 15 Ohio St.3d at 96, 472 N.E.2d at 1052. Unfortunately, in the case at bar, this Court has failed to adopt the reasoning of the Supreme Court of Ohio.
In the second case, five employees sued Snow Metal Products, their former employer, alleging that they had received serious physical injuries as a result of their exposure to toxic chemicals at the workplace. The complaint alleged that Snow knew there were toxic chemicals in the workplace but took no action to rectify the situation, did not warn the employees of the danger, and told them the fumes were harmless. The court held that the plaintiffs alleged sufficient evidence to create a jury question as to whether or not Snow's conduct was intentional. The fact that the complaint *888 described Snow's actions as malicious, willful and reckless as opposed to intentional was not dispositive. Unfortunately, the majority of this Court feels as though they, and not the jury, are in a better position to determine whether the defendant's actions were intentional or merely negligent.
I am afraid that this Court, by failing to answer the question presented and failing to recognize the existence of a prima facie case sounding in intentional tort, has given employers a license to maim and kill their employees. The majority seems to lose sight of the fact that all the plaintiffs were seeking to do is allow the jury to determine whether the defendant's actions were negligent or intentional.
For the reasons expressed I would answer the question presented in the negative, quash the decision of the district court and remand the cause to the circuit court.
SHAW and BARKETT, JJ., concur.